UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTO GUTIERREZ,<br><br>    Petitioner,<br><br>v.<br><br>JEFFERY BEARD, et al.,<br><br>    Respondent. | Case No. 14-cv-03767-YGR<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; AND DENYING CERTIFICATE OF APPEALABILITY** |

Petitioner Ernesto Gutierrez brings the instant *pro se* habeas action under 28 U.S.C. § 2254 to challenge his 2011 conviction and sentence rendered in the Napa County Superior Court. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the petition for the reasons set forth below.

**I.   BACKGROUND**

On May 24, 2011, a Napa County jury convicted Petitioner of kidnapping, false imprisonment by violence, and dissuading a witness. Clerk's Transcript ("CT") at 114-16. Petitioner was sentenced to 25 years to life for kidnapping, one year for dissuading a witness, and five years for a prior serious felony. CT at 226, 228.[1]

On January 25, 2013, the California Court of Appeal reversed the conviction for false imprisonment, vacated the sentence for dissuading a witness, and instructed the trial court to resentence Petitioner on the dissuading a witness count. *People v. Gutierrez*, No. A133216, 2013 WL 287151, at *13 (Cal. Ct. App. Jan. 25, 2013). The judgment was affirmed in all other respects. *Id*.

---

[1] The trial court stayed the sentence on the false imprisonment conviction. Reporter's Transcript ("RT") at 1827.

1    On May 1, 2013, the California Supreme Court denied review.  Answer, Exs. 12, 13.

2    On June 1, 2014, the California Supreme Court denied Petitioner's state habeas petition

3  with citations to *People v. Duvall*, 9 Cal. 4th 464, 474 (1995), *In re Waltreus*, 62 Cal. 2d 218, 225

4  (1965), and *In re Swain*, 34 Cal. 2d 300, 304 (1949).  Answer, Exs. 14, 15.

5    On August 19, 2014, Petitioner filed the instant petition, alleging that: (1) trial counsel was

6  ineffective; and (2) there was insufficient evidence to support the charge of dissuading a witness.

7  Dkt. 1.

8    On October 3, 2014, the Court issued an Order to Show Cause why the writ should not be

9  granted.  Dkt. 8.  Respondent filed an answer, and Petitioner filed a traverse.  Dkts. 12, 17.  The

10 matter is fully briefed and ripe for adjudication.

## II.  FACTS

The California Court of Appeal summarized the relevant facts of the underlying crime as follows:

> On December 24, 2010, Gutierrez met his former girlfriend (the victim), while she was walking back from a market with friends to her inpatient drug treatment program, Project 90, in Napa.  The victim and Gutierrez had dated for four years, and lived together for about three years, until the victim entered Project 90 in November 2010.  The victim and Gutierrez used drugs, including methamphetamines, and the relationship was characterized by violence on both sides.  (Gutierrez testified that he had used drugs prior to his relationship with the victim, but claimed not to have done so during their relationship.)
>
> The victim's father had invited the victim and Gutierrez over for Christmas dinner the next day.  Gutierrez wanted to discuss that, and other matters, with the victim.  The victim telephoned Gutierrez and told him not to come because he was running late and her break from Project 90 would end soon, but he came anyway.
>
> The victim agreed to get into Gutierrez's truck so they could talk.  Gutierrez agreed to drive the victim back to Project 90 and talk in the parking lot.  The victim testified that she wanted to talk there so she would be safe and would not be late returning to her program.  After getting into the truck, the victim began to eat a burrito that Gutierrez had bought for them to share.  Gutierrez began to drive, but turned the opposite direction from Project 90 (turning left instead of right).  The victim and Gutierrez testified differently as to what followed.
>
> The victim testified that when Gutierrez turned the wrong way, she panicked and became scared because he was taking her away from where she had asked him to go.  She asked him where he was going,

2

and told him he was going in the wrong direction and to turn around. Gutierrez stopped the truck and acted like he was going to turn around, but then continued going straight. Gutierrez yelled at the victim and told her to "shut the F up." The victim continued screaming at Gutierrez, asking where he was going, asking to return to Project 90, and asking why he was doing this. Gutierrez kept telling the victim to "shut the F up" and that he needed to talk to her. When Gutierrez made a rolling stop at a stop sign, the victim opened the truck door and started to get out, but when she had one foot out, Gutierrez jerked her back by her hair. Because the truck was still moving, the victim screamed and told Gutierrez he was going to run over her legs and to please let go. Gutierrez told the victim to shut up a few times and to get into the truck. Gutierrez asked the victim if she was going to get into the truck if he stopped. The victim kept saying "[p]lease let go of me," "[you're] going to kill me," and "I don't want to die like this."

Gutierrez pulled into a court and stopped, picked up the victim by her belt loop and her hair, and pulled her back into the truck. He reversed out of the court and kept driving, holding onto her hair. When he stopped, he would pull her back in by her belt loop. Beginning when the victim tried to get out at the stop sign, she was hanging out of the truck—her hair was on the stick shift, her hips were where a passenger's feet would normally be, and her knees were hanging out of the truck. Her feet were dragging on the street. The victim was trying to get out of the truck "the whole time" by pulling away. She also kept her door open the whole time. She continued screaming and said "'It's Christmas Eve. Why are you doing this?'" Gutierrez continued to drive.

At one point during the drive, when Gutierrez turned into a court, he collided with or hit something. Because Gutierrez had come to a complete stop, the victim attempted to get out, but he pulled her back in and continued driving. The victim kept asking Gutierrez to let her go. She did not hit him.

The victim saw some people chasing the truck. Gutierrez stopped and let go of the victim's hair, and she rolled out of the truck onto the curb. Gutierrez drove off.

The victim testified that the ordeal seemed to last 15 minutes, but could have been shorter. She testified she was not injured, but she felt sore and some of her hair fell out, and her shoes and jeans were torn.

The victim related these facts to the responding police officer, Joshua Coleman. When Coleman arrived at the scene, the victim was crying and hysterical. Her jeans were torn at the bottoms, and her shoes had abrasions all around the bottom of the rubber.

Coleman had the victim get into his car and followed the route the victim thought Gutierrez had driven in his truck. Driving the route took two to three minutes. Based on the victim's description of the incident and driving the route with her, Coleman testified to the following: After the victim got into the truck, Gutierrez began driving north on Parrish Road (the opposite direction from Project

3

90). The victim was afraid Gutierrez would harm her, so she opened the door, propped it open with her foot, and asked to get out of the truck. Gutierrez continued driving north on Parrish Road. When Gutierrez stopped at a stop sign at the intersection of Parrish Road and Shetler, the victim got her feet out, but Gutierrez grabbed her by her hair and pulled her back into the truck. Gutierrez then went east on Shetler. Her feet were hanging out of the truck, and Gutierrez was holding both her hair and the stick shift in his right hand. The victim yelled and screamed at Gutierrez to stop the truck and let her out, but he continued driving east on Shetler to Shurtleff.

Gutierrez turned right and drove south on Shurtleff to Sylvia Court, where he made a right turn into the court. As he made that turn, he was too close to the parked vehicles, and the passenger door of the truck hit another vehicle. (The victim showed Coleman the truck on Sylvia Court that was damaged by Gutierrez's truck; she also told him that Gutierrez had made two right turns before turning into Sylvia Court.) Gutierrez then backed out of Sylvia Court. He "backtracked his route" back to Shetler, where he turned right and continued eastbound. He drove north on Russell Street, turned right on Linden and drove east, and turned right on Maria Drive, heading south. The victim got out of the vehicle on Maria Drive, and Gutierrez drove away. Coleman testified that the area where the incident occurred is residential with sidewalks and places one could pull a car over.

Del Pickard, an off-duty Napa State Hospital police officer who was driving home from work, noticed Gutierrez's truck because it looked like it was not going to stop at the stop sign at the corner of Shetler and Shurtleff. As the truck got closer, Pickard noticed the passenger door was open. The truck was going eastbound on Shetler, turned right and went south on Shurtleff. The truck did not stop at the stop sign, and Pickard noticed that the male driver was holding the female passenger by what looked like her shirt. It looked like the passenger was trying to get out, and there was a fight or struggle. Pickard called 911 and followed the truck. The passenger was holding the door open with her foot, like she was trying to get out.

As Pickard followed, Gutierrez turned into a side road where he "came up against a vehicle," then made a three-point turn and headed back north on Shurtleff to the intersection with Shetler (where Pickard had first seen him). Gutierrez turned right on Shetler, then left on Russell. Pickard had difficulty keeping up with Gutierrez, who was driving fast. The passenger door was open the whole time, with a foot or arm sticking out. Gutierrez turned right, then right again on Maria. Pickard then noticed that the passenger was holding the door with her hands, and her legs and feet were dragging on the pavement. The truck eventually slowed down on Maria, and the passenger let go. She tumbled, then got up and brushed herself off. The driver threw a purse out of the truck. Pickard followed the truck to get its license plate number, because he saw other people were helping the passenger. Pickard estimated that, from the time he first saw the truck until the passenger was able to get out, the truck traveled about one-and-one-half miles, and one to two minutes elapsed.

4

> Gutierrez's testimony differed from the victim's. Gutierrez testified that he initially turned left and drove away from Project 90 because there was a car blocking his exit to the right. He intended to go around the block and drive to Project 90. The victim started yelling that he was going the wrong way, "freaking out," and telling him to turn around. Gutierrez told her to hold on and he would turn around. They were in a residential area with no parking. He could not make a U-turn because there was a car behind him and another coming toward him. He also was reluctant to make a U-turn because his driver license was suspended and he did not have registration or insurance for his truck. He made a right turn, intending to go around and come back. The victim then threw the burrito at Gutierrez; it hit the window and some got in his hair and on his pants. The victim was screaming. She slapped him a few times. Gutierrez tried to calm the victim down, and told her he was taking her back to Project 90. The victim kept yelling and hitting Gutierrez. Gutierrez denied hitting the victim, but stated he tried to push her away.
>
> Gutierrez turned into a court and hit a parked truck. Gutierrez testified that this happened because he was next to a parked vehicle and was backing up, when the victim opened the passenger door "and caused the door to bust all the way open, and it messed it up." He then became paranoid and scared because his license was suspended, and he did not have registration or insurance. He tried to get away from the scene of the accident and sped off. The victim tried to jump out of the truck, but Gutierrez grabbed her by her hair and sweater and pulled her back into the truck, because he was driving fast and he did not want her to get hurt. The victim's hair or sweater got stuck in the stick shift. Gutierrez got her unhooked and stopped the truck. As soon as he saw the victim was out of the truck and out of danger, Gutierrez drove off, throwing her purse out of the truck. He left the scene because he was frightened about being apprehended for the hit and run and driving with a suspended license. He parked the truck and walked to a house, where he asked to borrow the telephone to call and report his truck stolen.
>
> Gutierrez testified that he drove only 100 yards after he saw the victim trying to get out of the truck. However, he also testified that, when the victim opened the door earlier (in the first court Gutierrez turned into), causing Gutierrez to collide with a parked vehicle, "that's when I guess she was trying to get out at that point."
>
> Gutierrez testified that he believed Pickard, who was following Gutierrez's truck, had accurately described the route Gutierrez took.

*Gutierrez*, 2013 WL 287151, at *1-3.

### III. LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, a district court may not grant a petition challenging a state conviction or sentence on the basis of a

5

claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, see *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, s*ee Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Contrary to Petitioner's understanding, a federal court cannot merely order an evidentiary hearing and retake the evidence at trial. Instead, it must follow this two-prong test in the first instance.

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

6

Even if constitutional error is established, habeas relief is warranted only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Penry v. Johnson*, 532 U.S. 782, 795-96 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Thus, a federal court will "look through" the unexplained orders of the state courts rejecting a petitioner's claims and analyze whether the last reasoned opinion of the state courts unreasonably applied Supreme Court precedent. *See Ylst*, 501 U.S. at 804-06; *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000). The last reasoned decision in this case is the California Court of Appeal's unpublished disposition issued on January 25, 2013, which applies to the second claim.

However, when presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state-court decision is objectively unreasonable. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). This review is not a "de novo review of the constitutional issue"; rather, it is the only way a federal court can determine whether a state-court decision is objectively unreasonable where the state court is silent. *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). This applies for the first claim in the petition.

**IV. DISCUSSION**

    **A. Ineffective Assistance of Counsel**

Petitioner contends trial counsel provided ineffective assistance by: (a) failing to ensure that the jury instructions were correct; (b) failing to move for dismissal of the dissuading a witness count after the prosecution rested; (c) not objecting to the false imprisonment count as a lesser included offense of kidnapping; and (d) the cumulative effect of all counsel's errors violated due process. Petitioner presented this claim in his state habeas petition. It was denied by the

California Supreme Court without a reasoned opinion but with citations to *Duvall*, *Waltreus*, and *Swain*.

### 1. Applicable Law

An ineffective assistance of counsel claim under the Sixth Amendment is reviewed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first prong, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Because of the difficulties inherent in fairly evaluating counsel's performance, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. To satisfy the second prong under *Strickland*, a petitioner must establish that he was prejudiced by counsel's substandard performance. *See Gonzalez v. Knowles*, 515 F.3d 1006, 1014 (9th Cir. 2008) (citing *Strickland*, 466 U.S. at 694).

Under AEDPA, a federal court is not to exercise its independent judgment in assessing whether the state court decision applied the *Strickland* standard correctly; rather, the petitioner must show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. *Bell v. Cone*, 535 U.S. 685, 699 (2002); *see also Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (federal habeas court's review of state court's decision on ineffective assistance of counsel claim is "doubly deferential."). The Supreme Court has specifically warned that: "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under [28 U.S.C.] § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

To prevail on an ineffective assistance claim, the petitioner must also demonstrate by a reasonable probability that but for the error of counsel, the outcome of the trial would have been different. *Strickland*, 466 U.S. at 694.

### 2. Analysis

#### a. Jury Instructions

In this federal petition, Petitioner fails to identify the specific jury instructions that he alleges were incorrect, thus he is not entitled to relief. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."). In his state habeas petition, Petitioner argued that trial counsel was ineffective for failing to ensure that the judge correctly instructed on the defense theory. Answer, Ex. 14 at 222. To the extent Petitioner is asserting this claim, he is still not entitled to relief.

On direct appeal, Petitioner argued that the trial court erred by failing to sua sponte issue several jury instructions regarding the possible defenses of incidental movement, self-defense, or necessity. The California Court of Appeal denied this claim and issued a detailed and reasoned opinion finding that there was insufficient evidence to support jury instructions for these defenses and even if there had been any error, it was harmless. *Gutierrez*, 2013 WL 287151, at *4-9.

Based on the California Court of Appeal's holding, Petitioner has not shown that trial counsel was deficient for failing to request instructions that were not supported by the evidence. Even if trial counsel had been deficient, Petitioner cannot demonstrate prejudice. In denying this claim that was brought in the state habeas petition, the California Supreme Court could have reasonably concluded that there was no reasonable probability that the result of the trial would have been different if counsel had requested these instructions. There was no evidence to support issuing jury instructions on these defenses and there was overwhelming evidence against Petitioner. Petitioner has failed to show that the state court denial was an unreasonable application of Supreme Court authority.

#### b. Failure to Request Dismissal

Petitioner next argues that trial counsel was ineffective for failing to request dismissal of the dissuading a witness count. Petitioner asserts in an underlying claim that there was insufficient evidence to support the dissuading a witness count. As discussed below, this sufficiency of the evidence claim was brought on direct appeal and denied by the California Court of Appeal, and the denial was not an unreasonable application of Supreme Court authority.

9

1   Because there is no merit to the underlying claim, the state court's denial of the ineffective
2   assistance of counsel claim was not an unreasonable application of Supreme Court authority.  *See*
3   *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) (counsel's performance not deficient for
4   failing to raise meritless objection); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) (failure to
5   take a futile action can never be deficient performance).

### c.     Failure to Object to Lesser-Included Offense

Petitioner contends that trial counsel was ineffective for failing to object to the false imprisonment count as a lesser-included offense of the kidnapping count.  However, on direct appeal the California Court of Appeal overturned the conviction for false imprisonment because it was a lesser-included offense.  Because the false imprisonment count has already been reversed, there is no other relief this Court can provide.  Even assuming that counsel had been deficient, Petitioner has failed to show prejudice because there was overwhelming evidence against Petitioner and because this count was dismissed.  The Court will consider this claim with respect to Petitioner's cumulative error claim below.

### d.     Cumulative Error

Petitioner argues that the cumulative effect of counsel's errors entitles him to relief and he cites to *United States v. Cronic*, 466 U.S. 648 (1984).  Where counsel's conduct is egregiously prejudicial, no showing that there is a reasonable probability that the outcome would have been different is required and prejudice and ineffective assistance are presumed.  *Cronic*, 466 U.S. at 658-62.  These will be those rare cases where counsel "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing."  *Id*. at 659.  *See, e.g.*, *United States v. Swanson*, 943 F.2d 1070, 1074 (9th Cir. 1991) (prejudice presumed where counsel conceded in argument to jury that there was no reasonable doubt regarding factual issue in dispute); *Javor v. United States*, 724 F.2d 831, 833-34 (9th Cir. 1984) (where counsel sleeps through substantial portion of trial no prejudice need be shown).

For *Cronic's* presumption of prejudice to apply, the attorney's failure must be "complete." *Bell v. Cone*, 535 U.S. 685, 696-97 (2002); *see, e.g.*, *Wright v. Van Patten*, 552 U.S. 120 (2008) (per curiam) (finding presumption of prejudice did not apply where counsel participated in a plea

10

hearing by speaker phone). The court must consider the proceeding as a whole; that counsel failed to subject the prosecution's case to meaningful adversarial testing at specific points does not trigger *Cronic's* presumption of prejudice. *Bell*, 535 U.S. at 696-97.

Petitioner cites to his above claims of ineffective assistance of counsel to support his *Cronic* claim. Petitioner failed to demonstrate that counsel was ineffective in failing to request the jury instructions on select defenses or requesting the dismissal of the dissuading a witness count. While Petitioner can show that counsel was deficient in failing to object to the lesser-included false imprisonment offense, he fails to demonstrate prejudice because the state court already overturned his conviction on that count. Regardless, this one error is insufficient to support a *Cronic* claim. The Court has conducted an independent review of the record and finds that the California Supreme Court's denial of this claim was not objectively unreasonable. There was overwhelming evidence presented against Petitioner from the victim and from a witness who observed Petitioner holding the victim halfway in the truck, her feet dragging on the street, while he continued driving despite the victim attempting to flee the truck. Petitioner has not shown a complete failure by counsel to meet the high threshold for a *Cronic* claim.[2]

**B.      Sufficiency of the Evidence**

Petitioner alleges that there was insufficient evidence to support the conviction for dissuading a witness. The state appellate court rejected Petitioner's claim in a reasoned opinion as follows:

> A. Background
> After the events underlying the kidnapping and false imprisonment charges and after the victim testified at the preliminary hearing for those charges, Gutierrez sent his cousin a letter and a card addressed to the victim. The victim read them when she visited her dog at the cousin's house. In the letter, Gutierrez stated that, if the victim went to southern California and the district attorney could not find her,

---

[2] To the extent that the ineffective assistance of counsel claim brought in the state habeas petition was not denied on the merits by the California Supreme Court and was procedurally defaulted, it is still denied by this Court on the merits. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). Even if the procedural bar was not independent and adequate and this Court reviewed the claim de novo, *see Pirtle v. Morgan*, 313 F.3d 1160, 1167-68 (9th Cir. 2002) (holding that deferential AEDPA standard of review does not apply in this context), the claims are still denied for the reasons set forth above.

11

there would be no case against Gutierrez and the charges would be dropped. In the card, Gutierrez stated that, if the victim told the district attorney and Gutierrez's attorney that the incident in the truck was a misunderstanding, then "this nightmare would be over." When Gutierrez sent the letter and card, a restraining order was in effect protecting the victim and prohibiting Gutierrez from contacting her. Gutierrez understood the order prohibited him from contacting the victim.

B. Analysis
Gutierrez contends there is insufficient evidence to sustain his conviction of dissuading a witness (count 3; § 136.1, subd. (c)(3)). To determine whether the prosecution met its burden to prove a charge beyond a reasonable doubt, we apply the "substantial evidence" test. (*People v. Cuevas* (1995) 12 Cal. 4th 252, 260.) Under that standard, we "'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence-that is, evidence which is reasonable, credible, and of solid value-such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.]" (*Id*. at pp. 260–261.)

Under section 136.1, it is a crime to knowingly and maliciously prevent or dissuade, or to knowingly and maliciously attempt to prevent or dissuade, a witness or victim from attending or giving testimony at any trial or other proceeding. (§ 136.1, subds. (a)(1) & (2).) Section 136.1, subdivision (c) imposes increased punishment where the defendant committed one of the above acts knowingly and maliciously under specified circumstances, including where the act is accompanied by force or a threat of force or violence (§ 136.1, subd. (c)(1)), or where the defendant has previously been convicted of dissuading a witness (§ 136.1, subd. (c)(3)). Gutierrez was charged under section 136.1, subdivision (c)(3), based on a prior conviction of dissuading a witness; he was not charged with use of force or threats under section 136.1, subdivision (c)(1).

Gutierrez contends the evidence is insufficient because, although he "did express his clear preference" that the victim not testify, there was no proof that he intended to take further actions to prevent her from doing so. He argues that he did not express or imply that any "retribution" or "consequences" would follow if the victim did not comply with his request that she not testify. But proof of these elements was not required. As Gutierrez concedes in his reply brief, proof of force or threats was not required for conviction under section 136.1, subdivision (c)(3). The jury was properly instructed that the People had to prove that Gutierrez "maliciously tried to discourage [the victim] from attending or giving testimony at the jury trial," and that he "knew he was trying to discourage [the victim] from attending or giving testimony at the jury trial and

12

> intended to do so." (*See* § 136.1, subds. (a)(2), (c)(3); CALCRIM No. 2622.) The letter and card Gutierrez sent provided substantial evidence that he tried to discourage the victim from testifying (and that he knew he was trying to discourage her and intended to do so). Gutierrez stated his preference that the victim not testify, and he suggested specific courses of action she could take instead of testifying (i.e., moving to southern California, or telling the district attorney the incident was a misunderstanding).
>
> In his reply brief, Gutierrez suggests there was insufficient proof of the required element of malice. (*Se*e § 136.1, subds. (a)(2), (c).) We disagree. For purposes of section 136.1, malice means "an intent to vex, annoy, harm, or injure in any way another person, or to thwart *or* interfere in any manner with the orderly administration of justice." (§ 136, subd. (1), italics added.) Because Gutierrez's statements evidenced an intent that the victim change her testimony or not testify, they provide substantial evidence of malice.

*Gutierrez*, 2013 WL 287151, at *9-11 (footnotes omitted).

### 1. Applicable Law

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, *see Jackson v. Virginia*, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, *see id*. at 324.

The Supreme Court has emphasized that "*Jackson* claims face a high bar in federal habeas proceedings . . . ." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062, 2064 (2012) (per curiam) (finding that the Third Circuit "unduly impinged on the jury's role as factfinder" and failed to apply the deferential standard of *Jackson* when it engaged in "fine-grained factual parsing" to find that the evidence was insufficient to support petitioner's conviction). A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1993). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of

1   the crime beyond a reasonable doubt.'" *Payne*, 982 F.2d at 338 (quoting *Jackson*, 443 U.S. at

2   319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt

3   has there been a due process violation. *Jackson*, 443 U.S. at 324; *Payne*, 982 F.2d at 338.

**2. Analysis**

5   The state court rejected Petitioner's argument that there was insufficient evidence to show

6   malice or that he would have taken actions to prevent the victim from testifying. To the extent

7   Petitioner argues that the state court was incorrect in its analysis of state law, he is not entitled to

8   habeas relief. The *Jackson* standard must be applied with explicit reference to the substantive

9   elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16; *see*, *e.g.*,

10  *Boyer v. Belleque*, 659 F.3d 957, 968 (9th Cir. 2011) (concluding it was not unreasonable, in light

11  of Oregon case law, for Oregon court to conclude that a rational jury could find beyond a

12  reasonable doubt that petitioner intended to kill his victim based on proof that he anally penetrated

13  several victims with knowledge that he could infect them with AIDS). The state court's ruling on

14  the state law issue is binding on this Court.

15  However, "the minimum amount of evidence that the Due Process Clause requires to prove

16  the offense is purely a matter of federal law," *Coleman*, 132 S. Ct. at 2064, yet, Petitioner has not

17  shown that the state court was objectively unreasonable in finding sufficient evidence to support

18  the dissuading a witness conviction in light of the high bar for *Jackson* claims. There was

19  sufficient evidence to show that Petitioner knew he was trying to discourage the victim from

20  testifying and that he intended to do so. Despite a restraining order, Petitioner was able to get a

21  letter to the victim telling her that if she went to southern California, the prosecutor would be

22  unable to find her and the charges would be dropped against him. Petitioner further stated in the

23  letter that the incident in the truck was simply a misunderstanding and if the victim was

24  unavailable then his nightmare would be over. Viewing this evidence in the light most favorable

25  to the prosecution, the jury could have found the essential elements of the crime beyond a

26  reasonable doubt. Petitioner has failed to meet the high threshold of a sufficiency of the evidence

27  claim and he is not entitled to habeas relief.

## V. CERTIFICATE OF APPEALABILITY

No certificate of appealability is warranted in this case. For the reasons set out above, jurists of reason would not find this Court's denial of Petitioner's claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

## VI. CONCLUSION

For the reasons outlined above, the Court orders as follows:

1. All claims from the Petition are DENIED, and a certificate of appealability will not issue. Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

2. The Clerk of the Court shall enter judgment, terminate any pending motions and close the file.

**IT IS SO ORDERED.**

Dated: February 16, 2016

_____
YVONNE GONZALEZ ROGERS
United States District Court Judge

15